UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LYNNEA BLACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 3:16-CV-074 JD |
| | ) |
| METROPOLITAN SCHOOL DISTRICT | ) |
| OF NEW DURHAM TOWNSHIP, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Lynnea Black brings this civil rights action against the Metropolitan School

District of New Durham Township (the "District") and several of its current and former

employees.[1] Specifically, Black alleges that the Defendants discriminated against her based on

her sex in violation of the Fourteenth Amendment and Title IX of the Education Amendments of

1972, 20 U.S.C. § 1681 *et seq.*, and committed various other state law torts against her while she

was a student at Westville High School, a school within the District. Defendants have moved for

summary judgment.[2] In her response to their motion, Black requests that the Court dismiss all

claims against all defendants, except for her Title IX claim against the District and her

Fourteenth Amendment Equal Protection claim against Melissa Fleming. [DE 51 at 2] The Court

---

[1] Black's mother, Bianca Binstock, originally filed this lawsuit as next friend for her then-minor daughter. [DE 1] Black has since reached the age of majority and has been substituted as the real party in interest. [DE 35; DE 57]

[2] Defendants filed their motion for summary judgment on the last day for dispositive motions, November 15, 2017 [DE 43], but apparently their supporting memorandum and exhibits were not filed until a few minutes after midnight, on November 16. [DE 44] Black filed an objection to the late memorandum [DE 45], requesting that it not be considered by the Court. Her objection, however, is not well-taken, as Black provides no argument as to how the minimal delay prejudiced her in any way.

will grant this request. As for the remaining two claims, for the reasons stated herein, the Court

will grant in part and deny in part Defendants' motion.

## STANDARD

On summary judgment, the moving party bears the burden of demonstrating that there "is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A "material" fact is one identified by the substantive law as

affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

"genuine issue" exists with respect to any material fact when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id*.  Where a factual record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391

U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court

must construe all facts in the light most favorable to the non-moving party and draw all

reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697

(7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## RELEVANT FACTUAL BACKGROUND

During her freshman year at Westville High School (the 2013-2014 academic calendar),

Lynnea Black, who identified herself as bisexual to school officials and students, participated as

a member of the school's freshman cheerleading team. At the beginning of the year, Black's

cheerleading coach was Justin McSurely, but the District replaced him with Melissa Fleming in

February 2014. Black had no issues with McSurely during his tenure as coach, but when Fleming

took over, Black alleges that Fleming held her out of practices, performances, and team events based on her failure to conform to sex-based stereotypes.

Black did not try out for the cheerleading team the following year. Instead, with the administration's approval, she created a school mascot and fulfilled that role by leading Westville's fans at athletic games, parades, etc. But even though Black was no longer under Fleming's supervision while serving as the school mascot, Black's interaction with Fleming continued. On more than one occasion during the 2014-2015 school year, Black alleges that Fleming berated and physically assaulted her at athletic events "because of and on the basis of sex." [DE 52 at 18-19] Black reported some of these and other incidents to Assistant Principal and Athletic Director Brian Ton, and Ton followed up by questioning Fleming about her conduct.

Fleming did not return to coach the cheerleading team after the 2014-2015 academic year. Meanwhile, Black continued to serve as the school mascot through her junior and senior years, completed her course of studies at Westville, and graduated. Through her mother as next friend, Black filed this lawsuit on February 17, 2016.

## DISCUSSION

After agreeing to dismiss multiple claims and named parties, Black still pursues her Fourteenth Amendment claim for sex discrimination against Fleming. She also seeks to hold the District liable for acting with deliberate indifference to her reported complaints of sex discrimination during the 2014-2015 academic year. For the following reasons, the Court will deny summary judgment with respect to Black's Fourteenth Amendment claim, but will grant summary judgment in favor of the District on Black's Title IX allegations.

**A. Fourteenth Amendment Equal Protection**

The Equal Protection clause of the Fourteenth Amendment "grants all Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "This Amendment provides protection against discrimination on the basis of gender or sexual orientation." *Henderson v. Adams*, 209 F. Supp. 3d 1059, 1071 (S.D. Ind. 2016) (citing *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576-82 (7th Cir. 2014)). Furthermore, "[s]tate actors controlling gates to opportunity … may not exclude qualified individuals based on 'fixed notions concerning the roles and abilities of males and females.'" *United States v. Virginia*, 518 U.S. 515, 541-42 (1996) (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982), and citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S., 127, 139 (1994) (equal protection principles, as applied to gender classifications, mean state actors may not rely on "overbroad" generalizations to make "judgments about people that are likely to … perpetuate historical patterns of discrimination")); *see also Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051-52 (7th Cir. 2017) (affirming preliminary injunction where plaintiff brought equal protection claim based on school bathroom policy that treated differently those students "who fail[ed] to conform to the sex-based stereotypes associated with their assigned sex at birth").

When a state actor violates an individual's right to be free from discrimination, a plaintiff may seek relief under 42 U.S.C. § 1983. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). "To state a claim for an equal protection violation based on her sex, a plaintiff must show that (1) the defendants discriminated against her based on her membership in a definable class, and (2) the defendants acted with a 'nefarious discriminatory purpose.'" *Snyder v. Smith*, 7 F. Supp. 3d

842, 860 (S.D. Ind. 2014) (quoting *Nabozny*, 92 F.3d at 453). "Discriminatory purpose …

implies more than intent as volition or intent as awareness of consequences. It implies that a

decisionmaker singled out a particular group for disparate treatment and selected his course of

action at least in part for the purpose of causing its adverse effects on the identifiable group."

*Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

Black has provided enough evidence to create a genuine issue of material fact as to

whether Fleming singled her out for not conforming to sex-based stereotypes both while she was

a member of the cheerleading team during the 2013-2014 academic year and during her tenure as

the school mascot in 2014-2015. Regarding the former, according to Black, Fleming believed the

cheerleaders existed for one purpose: to make the boys on the basketball team "happy." [Black

Dep. 139:10-12] Fleming repeatedly came down on Black for not being "girly" or "pretty"

enough to live up to this goal. *Id.* at 136:2-7; 139:8-20. On one occasion, for example, Fleming

suggested Black could improve her performance by letting her hair grow longer, so as not to

appear so "butchy." *Id.* at 140:7-10. As a result of Black being insufficiently feminine, Fleming

held her out of cheers at games and threatened to ban her from cheering with the team. *Id.* at

142:3-6, 19-22.

As alleged by Black, Fleming also excluded her from team events for discriminatory

purposes, only to later criticize her absence. For example, the cheerleading squad held a team

sleepover at which the team members and Fleming made matching t-shirts to wear at an

upcoming game. Black did not attend the sleepover because she did know about it. She therefore

had no t-shirt, and when it came time to perform at the game, Fleming benched her because she

did not match the team and then openly questioned her dedication for failing to participate in the

sleepover. *Id.* at 151:20-152:2; 157:20-24. Other team members, however, informed Black that

Fleming purposefully concealed the event from her because Fleming did not want "a gay girl sleeping by other girls." *Id.* at 216:16-217:22. Fleming reportedly told this to team members outside of Black's presence, and Black identified at least one individual who could corroborate this. *Id.* at 218:7-15. For their part, Defendants present only one piece of evidence in rebuttal: Fleming's sworn affidavit in which she attests, in one sentence, "I never organized a cheerleader sleepover." [Fleming Aff. ¶ 10] This vague statement tells the Court little and fails to negate the genuine issue created by Black's testimony.[3] Defendants also attempt to portray Fleming as a tough coach rather than someone who acted with discriminatory intent. But Fleming's actual conduct and actions toward Black appear to be undisputed, and so it will be for the jury to decide whether Fleming's actions were born of discrimination versus mere coaching styles.

Unsurprisingly, Black did not try out for the cheerleading team the following year. Her interaction with Fleming, however, continued. Specifically, on two separate occasions while serving as the school mascot, Black alleges that Fleming attacked her "because of and on the basis of sex." [DE 52 at 18-19][4] First, at a home game in December 2014, Fleming allegedly confronted Black and poked her in the chest for violating the Indiana High School Athletic Association's rules by walking in a prohibited area. [Black Dep. 197:14-15; 200:10-14] Then, at another game later in the season, Fleming allegedly grabbed Black and dragged her down several

---

[3] Admittedly, the bulk of Black's evidence comes from her own deposition, and the record contains no sworn statements from anyone else who may have witnessed Fleming's alleged discriminatory conduct (although, the record includes some unsworn letters of support). Nonetheless, the nonmoving party at this stage "need not depose her own witnesses or produce evidence in a form that would be admissible at trial …." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[4] Black's complaint also alleges that Fleming discriminated against her by banning her from being photographed with the cheerleading team. [DE 57 ¶ 37] However, the record contains no evidence whatsoever to support this. In fact, Fleming was not even present at the incident Black complains about. [Fleming Aff. ¶ 22]

bleachers for joining in an unsportsmanlike chant. *Id.* at 211:8-215:6. Despite Fleming's proffered reasons for confronting Black at these events (the rules infraction and the unsportsmanlike nature of the chant), given the history recited above, a reasonable juror could infer that Fleming's decision to *physically attack* Black in response to these minor transgressions went beyond any supervisory duties Fleming may have had and was motivated by a sex-based animus. Thus, the Court will deny Defendants' motion for summary judgment as to Black's Fourteenth Amendment equal protection claim against Fleming.

**B.      Title IX**

Black also alleges that the District engaged in sex-based discrimination in violation of Title IX. Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Under Title IX, a recipient of Federal funds may be liable only for damages suffered as a result of its own misconduct. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). In *Davis*, the Supreme Court held that school districts may be liable if they are "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650. "To have actual knowledge of an incident, school officials must have witnessed it or received a report of it." *Doe v. Galster*, 768 F.3d 611, 614 (7th Cir. 2014) (citing *Gabrielle M. v. Park Forest-Chicago Heights, Illinois School Dist. 163*, 315 F.3d 817, 823-24 (7th Cir. 2003)). "To impose liability, school officials' response to known harassment also must have been

'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648)).

Federal courts look to Title VII cases to inform their analysis under Title IX. *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 953 (S.D. Ind. 2007) (citation omitted). A plaintiff can state a Title VII claim for sex discrimination based on her failure to conform to sex stereotypes. *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 351-52 (7th Cir. 2017); *see also Doe v. City of Belleville, Ill.*, 119 F.3d 563, 581 (7th Cir. 1997) (holding that "gender stereotyping" is actionable under Title VII because it relies "upon stereotypical notions about how men and women should appear and behave"), *vacated on other grounds by* 523 U.S. 1001 (1998). Based on Seventh Circuit Title VII caselaw, "it is conceivable that an individual could sustain a cause of action under Title IX if [s]he were to demonstrate that [s]he was being harassed … because [s]he was acting in a manner that did not adhere to the traditional [female] stereotypes." *Seiwert*, 497 F. Supp. 942, 953 (S.D. Ind. 2007); *see also Whitaker*, 858 F.3d at 1046-50 (consulting Title VII cases and holding that a student may bring a Title IX action based on a policy that "punishes that individual for his or her gender non-conformance").

In her opposition brief, Black cites only the following instances of alleged sex discrimination that she raised with the administration: (1) that "gay slurs" were being made, although Black does not emphasize this point; and (2) the incidents with Fleming at the basketball games (discussed above). [DE 52 at 14 (citing excerpts from Black Dep.)] Black maintains that she complained of these incidents to Assistant Principal Ton during at least ten meetings throughout the 2014-2015 academic year. [Black Dep. 260:6-24; 269:5-25; Ton Aff. ¶¶ 4-5, 21-22][5]

---

[5] The record contains no evidence that the administration ever received notice of the alleged discrimination Black experienced while on the cheerleading team. Despite the allegation in her complaint

Starting with Black's testimony about her complaints to Ton of "gay slurs" being used, "[i]t is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M.*, 315 F.3d at 822 (citing Fed. R. Civ. P. 56(e)). Black, however, "does not present details of when, where, or how often this alleged conduct occurred …. Those details are necessary to evaluate the severity and pervasiveness of the conduct …." *Id.* (affirming summary judgment for school district where plaintiff's allegations of sexual harassment by another student amounted to insufficient, unarticulated conduct) (citation omitted); *see also Bloomer v. Slater*, No. 00 C 3481, 2002 WL 1949728, at *9 (N.D. Ill. Aug. 23, 2002) (cited as analogous by *Gabrielle M.* and refusing to allow hostile work environment plaintiff to rely on vague, general allegations of inappropriate comments without details of the offending conduct). To the extent Black wishes to pursue a Title IX claim based on the District's alleged deliberate indifference to reported slurs, she cannot do so on this record.

Turning to the two incidents involving Ms. Fleming at the basketball games, the record leaves open questions as to what exactly Black told Ton during the ten purported meetings. While Black maintains that she characterized these events as sex-based harassment to Ton, Ton

---

that she met with administrators Kenneth Shilt, Christopher George, and Brian Ton on multiple occasions to complain about this purported discrimination [DE 57 ¶¶ 30-31], nothing supports those contentions regarding Shilt or George. As for Ton, he attests that he did not speak with Black or her mother about Fleming during the 2013-2014 academic calendar (while she was a cheerleader), and the record contains no facts to the contrary; at that time, he was a sixth grade teacher and did not fill any administrative position. [Ton Aff. ¶ 4] The District later appointed him to the dual role of Assistant Principal and Athletic Director for 2014-2015. *Id.* ¶ 5. Given the lack of evidence as to whether any administrator received complaints or reports of Fleming's allegedly discriminatory conduct toward Black while Black was a cheerleader, the Court will not construe Black's Title IX claim as inclusive of the alleged discrimination she endured during the 2013-2014 academic year. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (Title IX liability requires that a school official "who at a minimum has authority to institute corrective measures" must have "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct" and have been deliberately indifferent to that misconduct.).

himself attests that Black never reported to him that she was being singled out because of her sexual orientation, or that Fleming touched or physically assaulted her in any way. [Ton Aff. ¶¶ 26-30, 38] Because of these gaps, it is difficult to assess at summary judgment whether Ton's responses to Black's complaints were "clearly unreasonable" in light of the circumstances known to him. *Davis*, 526 U.S. at 648.

But regardless of what the administration knew and whether its responses to Black's complaints were clearly unreasonable, the evidence does not show that Fleming's alleged conduct during 2014-2015 was so "severe, pervasive, and objectively offensive" that it deprived Black of "access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. To satisfy this element, "[t]he harassment must have a 'concrete, negative effect' on the victim's education." *Gabrielle M.*, 315 F.3d at 823 (citing *id.* at 654). "Examples of a negative impact on access to education may include dropping grades, becoming homebound or hospitalized due to harassment, or physical violence." *Id.* (citations omitted).

Black being poked in the chest or tugged down a few bleachers by Fleming, without more, does not "constitute[ ] severe harassment that caused a negative and 'systemic effect' on [Black's] education." *Galster*, 768 F.3d at 619 (citing *Davis*, 526 U.S. at 653). In *Galster*, for example, the Seventh Circuit held that genuine issues of material fact existed as to whether violent physical attacks on the plaintiff resulted in severe or pervasive harassment. *See id.* (affirming summary judgment for defendants, however, on other grounds). Key to the court's decision was that the violent attacks drove the plaintiff to leave the school district; thus, she was effectively denied equal access to educational benefits and opportunities. *Id.* at 618-19. Looking to the opinions of its sister circuits, the court reasoned that:

> A reasonable jury could find that the cumulative effects of this abuse were
> comparable to harassment found in rare cases to be sufficiently severe under Title

VI and Title IX. In *Zeno v. Pine Plains Central School District*, the Second
Circuit affirmed a jury verdict for plaintiff, finding that the severity requirement
was satisfied where the victim endured blatant racial slurs and physical attacks
that warranted police attention, including instances in which the victim was
punched and choked. 702 F.3d 655, 659-62, 667 (2d Cir. 2012). *Because of this
abuse, the victim opted to graduate early with a limited diploma rather than stay
and complete the work needed for a full high school diploma. Id*. at 663.
Similarly, in *Vance v. Spencer County Public School District*, the Sixth Circuit
affirmed a verdict for the plaintiff, finding sufficiently severe harassment where
the victim's harassers sexually propositioned her, yanked off her shirt, and
stabbed her in the hand. 231 F.3d 253, 259 (6th Cir. 2000). *Because of this
harassment, the victim began completing her studies at home. Id*. And in *Murrell
v. School District No. 1*, the Tenth Circuit found that a complaint sufficiently
alleged severe harassment where the victim was sexually assaulted for a month
and was eventually hospitalized and then *rendered homebound by the abuse*. 186
F.3d 1238, 1248 (10th Cir. 1999).

Doe, too, was subjected to multiple incidents of physical violence that merited
police attention. Although Doe was not hospitalized like the victim in *Murrell* or
forced to begin home-schooling like the victim in *Vance*, her family
understandably decided to change school districts *because of the prospect that
one or two of the three boys might return to Pilgrim Park with Doe for eighth
grade*. The Does' reasonable decision to move to another school district is
analogous to the victim's decision in *Zeno* to opt for an early graduation and a
lesser diploma rather than face more harassment. In short, a reasonable jury could
find that the violent attacks Doe suffered—which ultimately resulted in her
leaving the school district—constituted severe harassment that caused a negative
and "systemic effect" on Doe's education. *Davis*, 526 U.S. at 653, 119 S. Ct.
1661.

768 F.3d at 618-619 (emphasis added).

Along these lines, the Seventh Circuit has also affirmed summary judgment for

defendants on this issue where a plaintiff fails to demonstrate that the complained-of conduct

denied her equal access to educational opportunities. In *Trentadue v. Redmon*, for example,

plaintiff brought a Title IX claim against her school district after being sexually assaulted by her

JROTC instructor multiple times. 619 F.3d 648 (7th Cir. 2010). In that case, the instructor put his

hand down the back of plaintiff's pants and between her legs on several occasions, and, "[m]ost

disturbing of all, when she fell asleep under a tree during a nighttime drill, he put his hand inside

11

her pants and touched her genital area." *Id.* at 650. Even though the Circuit rightly described the instructor's conduct as "appalling," the court nonetheless affirmed summary judgment for the school district because the record did not suggest that the plaintiff endured "sexual harassment that was so pervasive, severe, and objectively offensive as to deny her equal access to education in violation of Title IX." *Id.* at 654 (citing *Gabrielle M.*, 315 F.3d at 822). To the contrary, even though plaintiff was mistreated and threatened by other students after she reported the abuse, had to seek counseling, and suffered from recurring nightmares, the court noted plaintiff's grades did not suffer, she was not extensively absent from school, and indeed she graduated. *Id.* at 653-54.

This case simply does not contain the same factual hallmarks of those "rare" circumstances – to borrow the Seventh Circuit's label – in which plaintiffs suffer such physical violence that they are either prevented from pursuing their current educational opportunities or driven to look elsewhere. Moreover, the fact that the cases cited by *Galster* involve perhaps more extreme physical assaults than here does not change the Court's analysis, which is guided not simply by the form or frequency of the violence, but by whether that violence constructively deprived the plaintiff of her access to equal educational opportunities. Evidence of the latter does not exist here, where, despite purportedly experiencing bruising, anxiety, and asthma attacks as a result of Fleming's actions [DE 51-2 at 2], Black continued to serve as the school mascot after the complained-of conduct, completed her course of studies at Westville, and graduated. In addition, she significantly *improved* her grades over the course of her time there, raising her grade point average from 1.39 to 2.7415. [Black Dep. 243:6-22] Thus, nothing in the record demonstrates that Black was denied any educational opportunities as a result of the alleged discrimination in 2014-2015. *See, e.g.*, *C.S. v. Couch*, 843 F. Supp. 2d 894, 909 (N.D. Ind. 2011) (granting summary judgment for defendants even where, despite being called a racial epithet,

12

thrown into a bathroom stall by other students, and suffering a head injury, Title VI plaintiff

remained in the school system for two more years before being expelled himself).[6]

Because Black has not presented any evidence that being poked in the chest or pulled

down some bleachers by Ms. Fleming "constituted severe harassment that caused a negative and

'systemic effect'" on her education, she cannot maintain her Title IX claim against the District.

*Galster*, 768 F.3d at 618-619 (quoting *Davis*, 526 U.S. at 653); *see also Gabrielle M.*, 315 F.3d

at 823 (affirming summary judgment where, although plaintiff was diagnosed with some

psychological problems, no evidence indicated that she was denied access to any educational

opportunities as a result of the alleged harassment).

Black lastly suggests that the District can be held liable for Title IX sex discrimination

because it maintained "deficient policies." [DE 52 at 14-15] *See, e.g.*, *Hayden*, 743 F.3d at 583

(Title IX discrimination may take the form of a school policy, thereby attributing the intent to

discriminate to the school district itself.). In support of this argument, Black submits only a letter

from the U.S. Department of Education's Office for Civil Rights ("OCR"), informing her mother

that, based on the filing of the instant lawsuit, OCR would be closing the complaint she filed

against the District for sex discrimination. [DE 51-4] Black construes part of this letter as a

conclusive finding that the District's harassment policies did not comply with Title IX, thereby

rendering it liable for intentional sex discrimination: "During OCR's investigation of your

complaint, OCR identified compliance concerns pertaining to the District's Anti-Harassment

Policy and Nondiscrimination Notice." [DE 52 at 14-15 (citing *id.*)] This single statement,

---

[6] *See also Milligan v. Bd. of Trustees*, No. 09-cv-320, 2010 WL 2649917, at *10 (S.D. Ill. June 30, 2010)
(granting summary judgment for defendant where emeritus professor repeatedly pinched and grabbed
Title IX plaintiff; those assaults did not change plaintiff's learning environment in any way, plaintiff's
grades did not drop, and plaintiff did not miss school despite feeling "uncomfortable" and "distracted" by
his own efforts to avoid the professor).

however, does not support Black's claim for policy-based sex discrimination for two main reasons. First, the OCR letter contains no conclusive "finding" – in fact, it explicitly states that it "is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such." [DE 51-4] Second, and more importantly, the letter provides no detail as to the "compliance concerns" OCR identified; it neither specifies the concerns themselves nor explains why those concerns may have been problematic for the District. As such, the OCR letter creates no issue of triable fact over the District's policies. For this and for all the foregoing reasons, the Court will grant summary judgment for the District on Black's Title IX claim.[7]

## CONCLUSION

For all the reasons stated herein, the Court **DENIES** Defendants' motion [DE 43] with regard to Black's Fourteenth Amendment equal protection claim against Fleming, **GRANTS** summary judgment for Defendants on Black's Title IX claim against the District, and **DISMISSES** all other claims against all other named parties. Finally, the Court **OVERRULES** Black's objection to Defendants' untimely memorandum in support of summary judgment. [DE 45] The Court will contact counsel to schedule a status conference.

SO ORDERED.

ENTERED:  September 12, 2018

> /s/ JON E. DEGUILIO
> Judge
> United States District Court

---

[7] Black also makes two passing references to Title IX retaliation in her complaint [DE 57 ¶¶ 41, 45], but presents no evidence that she was ever retaliated against for complaining about perceived discrimination. Furthermore, Black does not pursue this legal theory or otherwise argue against summary judgment as to it, and the Court will not create her arguments for her.